**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Southern Division**

SANDRA LYNN SMITH,                   \*

                                        \*

         Plaintiff,                 \*

                                        \*         Civil No. TMD 15-1694

         v.                          \*

                                        \*

                                        \*

CAROLYN W. COLVIN,             \*

**Acting Commissioner of Social Security,**   \*

                                        \*

         Defendant.               \*

                             \*\*\*\*\*\*\*\*\*\*\*\*

**MEMORANDUM OPINION GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

Plaintiff Sandra Lynn Smith seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying her applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment (ECF No. 14) and Defendant's Motion for Summary Judgment (ECF No. 17).[1] Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that she is not disabled. No hearing is necessary. L.R. 105.6. For the reasons that follow, Defendant's Motion for Summary Judgment (ECF No. 17) is **GRANTED**, Plaintiff's Motion for Summary Judgment (ECF No. 14) is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.

---

[1] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

# I

# Background

Plaintiff was born in 1971, has a high-school education, and previously worked as a receptionist, unit secretary, pharmacy technician, and cashier.  R. at 110, 752.  Plaintiff filed applications for DIB and SSI on September 29, 2003 (with a protective filing date of July 23, 2003), alleging disability beginning on October 1, 2001, due to fibromyalgia, cervical junctional disc disease, and chronic fatigue syndrome.  R. at 97-100, 118, 680-81.  The Commissioner denied Plaintiff's applications initially and again on reconsideration, so Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  R. at 60-62, 69-77, 682-89.  ALJ G.B. Arthur held a hearing on April 13, 2006 (R. at 32-58), and issued an unfavorable decision on February 22, 2007 (R. at 13-30).  On December 21, 2007, the Appeals Council denied Plaintiff's request for review.  R. at 7-10, 690-94.  Plaintiff sought judicial review in this Court.  *Smith v. Astrue*, Civil No. JKS 08-446 (D. Md. filed Feb. 20, 2008).  Upon the Commissioner's consent, the Court remanded the case on July 27, 2009.  The Appeals Council vacated the ALJ's decision and remanded the case on October 8, 2009.  R. at 756-65.

On February 3, 2010, ALJ Arthur held a supplemental hearing at which a vocational expert ("VE") testified, but Plaintiff did not appear because of health reasons.  R. at 877-86.  The ALJ held a second supplemental hearing where Plaintiff testified on March 30, 2010.  R. at 839-76.  On April 26, 2010, the ALJ issued a decision finding Plaintiff not disabled from the alleged onset date of disability of October 1, 2001, through the date of the decision.  R. at 729-55.  On October 11, 2010, Plaintiff filed exceptions to the decision with the Appeals Council (R. at 723-26), which declined to assume jurisdiction on July 12, 2012 (R. at 717-20).  The ALJ's decision

thus became the final decision of the Commissioner after remand.    *See* 20 C.F.R. §§ 404.984(b)(2), 416.1484(b)(2).

On May 12, 2015, the Appeals Council granted Plaintiff's request for additional time to file a civil action in this Court.  R. at 713-15.  On June 11, 2015, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision.  Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment. The case subsequently was reassigned to the undersigned.  The parties have briefed the issues, and the matter is now fully submitted.

## II

## Summary of Evidence

### A.    Opinion Evidence

On June 9, 2003, Harry Kerasidis, M.D., noted that Plaintiff was under his care

> for the evaluation and management of a sleep disorder consisting of sleep onset insomnia, sleep maintenance insomnia, possible Restless Legs Syndrome and complaints of daytime hypersomnolence.  Her condition has caused periods of sleeplessness lasting days at a time, resulting in severe fatigue and hypersomnolence.  On a self-reported questionnaire measuring daytime sleepiness (Epworth Sleepiness Scale) she scores 17, normal <10, which puts her in the moderate range of pathologic daytime sleepiness.  She is currently under evaluation for the potential diagnosis of narcolepsy and a polysomnogram and Multiple Sleep Latency Test has been ordered to further evaluate this diagnosis.

R. at 223.  "This condition of disordered sleep could potentially cause susceptibility to the effects of sedating medications and may explain her recent involvement in a single car motor vehicle accident."  R. at 223.

On March 19, 2004, a state agency medical consultant, Philip Moore, M.D., assessed Plaintiff's physical residual functional capacity ("RFC").  R. at 250-58, 745.  Dr. Moore opined that Plaintiff could (1) lift and/or carry twenty pounds occasionally and ten pounds frequently;

(2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling. R. at 251. Plaintiff occasionally could climb ladders, balance, stoop, kneel, crouch, and crawl. R. at 252. Plaintiff had no manipulative, visual, communicative, or environmental limitations. R. at 253-54. Dr. Moore opined that Plaintiff's alleged symptoms were partially credible. R. at 255.

On January 5, 2005, another state agency consultant, James Johnston, M.D., again assessed Plaintiff's physical RFC. R. at 550-58. Dr. Johnston opined that Plaintiff could (1) lift and/or carry twenty pounds occasionally and ten pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling. R. at 551. Plaintiff frequently could balance, stoop, kneel, crouch, crawl, and climb ramps and stairs (but only occasionally ladders, ropes, and scaffolds). R. at 552. Plaintiff had no manipulative, visual, communicative, or environmental limitations. R. at 553-54. Dr. Johnston also opined that Plaintiff's symptoms were partially credible. R. at 555.

On October 15, 2004, Plaintiff was referred to Zahir Yousaf, M.D., for persistent daytime fatigue. R. at 559. "Her pain medications were increased earlier this year and [she] was started on Duragesic Patch with significant improvement. However, [Plaintiff] noted significant daytime sleepiness and restless sleep with insomnia." R. at 559.

> Because of the excessive daytime fatigue, [Plaintiff] had a polysomnogram in January 2004 followed by an MSLT and those findings were consistent with severe central sleep apnea and severe hypersomnia. Follow-up studies were later repeated after the dose of the Duragesic was reduced to 75 mcg with significant improvement in sleep apnea. However, [Plaintiff] refused to continue with the smaller dose because of recurrence of her persistent pain.

R. at 559.

On January 30, 2010, Michael Kaiser, Ph.D., a psychologist, completed a "Mental Source Statement of Ability to Do Work-Related Activities (Mental)."  R. at 797-98.  According to Dr. Kaiser, because Plaintiff "had difficulty following two and three step instructions on the WAIS" (R. at 790-94) and was "too emotionally fragile to make complex work decisions," she had moderate limitations in (1) understanding, remembering, and carrying out complex instructions; and in (2) making judgments on complex work-related decisions.  R. at 797.

On February 5, 2010, Gerald Lee, M.D., Ph.D., conducted a consultative musculoskeletal examination of Plaintiff.  R. at 780-89.  Dr. Lee opined that "[Plaintiff] is able to perform work-related activities such as walking, sitting, hearing, handling objects, speaking, and traveling.  She would experience difficulties [with] prolonged walking, prolonged standing, overhead reaching with left, and heavy lifting and carrying."  R. at 781.  Specifically, Dr. Lee opined that, because of her left shoulder pain, Plaintiff could reach overhead and in all other directions with her left hand only occasionally.  R. at 786.

**B.**     **Hearing Testimony**

**1.**     **Plaintiff's Testimony**

The ALJ reviewed Plaintiff's testimony in his decision:

> [Plaintiff] also asserts she has had during the period under review disabling severe insomnia.  She takes Zyprexa for that, which sometimes helps and sometimes doesn't help.  The fatigue is not better and it might be a little worse.  She cannot drive but family members and friends drive her when she needs to go out.  She testifies however that she is able to use public transportation.

> . . . .

> The reason she is not able to work is because of pain and fatigue.  On a good day she would not be in bed all day and maybe could take a little walk.  In the last two weeks [14 days] she testifies she has had only three good days.  She still would need to take breaks during the good days she says but she would not be constantly in bed as she is the other days.  On a bad day she has to stay in bed all day.  In the last two weeks she has had seven bad . . . days and four in-between

days.  One hour she testifies is the most active she can be on the "in-between days" and then after that 1 hour she is down in bed for an hour or two.  Before the pain became as bad as it is now she could do a little laundry and other little things but now she can't.  She indicates she is unable to define that period however.  She denies there is any mental component to her disability.  She testifies that her disability is based on her physical condition and [not on] mental disorder.

R. at 747-48; *see* R. at 844-73.

### 2.     VE Testimony

The VE testified on February 3, 2010, that a hypothetical individual with Plaintiff's same age, education, and work experience with the RFC outlined below in Part III could perform the unskilled, light[2] jobs of office helper, router, and small-products assembler, as well as the sedentary[3] jobs of addresser, document preparer, and surveillance-system monitor.  R. at 882-85. With the exception of her testimony regarding a sit-stand option, the VE's testimony was consistent with the *Dictionary of Occupational Titles*[4] (the "DOT").  R. at 885.  The VE testified that no work would be available to someone with above moderate limitations as to (1) completing a normal workday or workweek without interruptions and as to (2) performing at a consistent pace without an unreasonable number of rest periods and as to (3) accepting

---

[2] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."  20 C.F.R. §§ 404.1568(a), 416.968(a).  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  *Id.* §§ 404.1567(b), 416.967(b).

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."  20 C.F.R. §§ 404.1567(a), 416.967(a).

[4] "The Social Security Administration has taken administrative notice of the *Dictionary of Occupational Titles*, which is published by the Department of Labor and gives detailed physical requirements for a variety of jobs."  *Massachi v. Astrue*, 486 F.3d 1149, 1152 n.8 (9th Cir. 2007); *see Pearson v. Colvin*, 810 F.3d 204, 205 n.1 (4th Cir. 2015); *DeLoatche v. Heckler*, 715 F.2d 148, 151 n.2 (4th Cir. 1983); 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1).  "Information contained in the [*Dictionary of Occupational Titles*] is not conclusive evidence of the existence of jobs in the national economy; however, it can be used to establish a rebuttable presumption." *English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir. 1993).

instructions, responding appropriately to criticism, and getting along with co-workers and peers. R. at 884-85.

**III**

**Summary of ALJ's Decision**

On April 26, 2010, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity from the alleged onset date of disability of October 1, 2001; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) was unable to perform her past relevant work; but (5) could perform other work in the national economy, such as the light jobs of office helper, router, or small-products assembler and the sedentary jobs of addresser, document preparer, or surveillance-system monitor. R. at 734-54. The ALJ thus found that she was not disabled from October 1, 2001, through the date of the decision. R. at 754.

In so finding, the ALJ found that, with regard to concentration, persistence, or pace, "[Plaintiff] has moderate difficulties. . . . Although [Plaintiff] has some difficulty in concentrating, the difficulty is no more than moderate." R. at 751. The ALJ then found that Plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). However, [Plaintiff's] ability to perform the full range of this exertional level is reduced as follows: She cannot climb ladders, ropes or scaffolds. She cannot be exposed to hazardous heights or hazardous moving machinery, or be exposed to extreme temperature changes as a precautionary measure. She can occasionally climb stairs and ramps, balance, stoop, and crouch. She cannot kneel or crawl. She requires low-stress work (work needing no more than moderate attention, concentration, persistence, and pace for prolonged periods). She experiences moderate pain. She must avoid concentrated exposure to excessive vibration. She also needs to avoid excessive dust, fumes, chemicals, poor ventilation, and

excessive humidity or wetness.  She is precluded from work requiring the use of push/pull controls with her legs.  She must not lift or carry above shoulder height. She has the ability to walk or stand for a total of four hours in an eight-hour day, and to sit a total of six hours in an eight-hour day.  She requires the option to alternate between sitting and standing such that not more than a half hour is required to either sit or stand at any one time.  She has moderate limitations as to performing activities within a schedule and maintaining regular attendance for reliability purposes, and being punctual within customary tolerances, and as to completing a normal work day or work week without an unreasonable number and length of rest periods.  She should have no direct, immediate contact with the general public on a regular basis, but is not precluded from all contact with the general public.  She has moderate limitations as to accepting instructions and responding appropriately to criticism from supervisors, and interacting and getting along with co-workers and peers.

R. at 751-52 (footnotes omitted).  The ALJ defined "moderate" "to preclude the attention and concentration required for high-stress work and complex work, but which is not at a level of severity for less stressful work of an unskilled nature involving using common sense while following instructions."  R. at 751 n.5.  The ALJ also considered Plaintiff's credibility and found that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent" with the ALJ's RFC assessment.  R. at 749.

## IV

## Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-380 (2003). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[5]

---

[5] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment.  If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience.   20 C.F.R.  §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work.   20 C.F.R.  §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4).   RFC is a measurement of the most a claimant can do despite his or her limitations.  *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).   The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."   20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).   The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.  *See id.*  If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.   *Id.*  §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is

in a routine work setting.  *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience. *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

If an ALJ finds that a claimant, who has medical evidence of drug addiction or alcoholism, is disabled, the ALJ must then determine whether the addiction or alcoholism is a contributing material factor to the determination of disability. *Id.* §§ 404.1535(a), 416.935(a). The key factor is whether the ALJ still would find the claimant disabled if the drug or alcohol use stopped. *Id.* §§ 404.1535(b)(1), 416.935(b)(1). To make this determination, the ALJ evaluates which of the claimant's current physical and mental limitations would remain if the claimant stopped using drugs or alcohol and then determines whether any or all of the remaining limitations would be disabling. *Id.* §§ 404.1535(b)(2), 416.935(b)(2). If the ALJ determines that the remaining limitations would not be disabling, then the ALJ will find that the drug addiction or alcoholism is a material contributing factor, and a determination of disability is prohibited. *Id.* §§ 404.1535(b)(2)(i), 416.935(b)(2)(i). The burden to prove that substance abuse is not a contributing factor material to his disability lies with the claimant. *Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999).

# V

## Substantial Evidence Standard

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence.  *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law."  *Id.*  The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.  *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner.  *Hancock*, 667 F.3d at 472.  Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court."  *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).  When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ.  *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

# VI

## Discussion

Plaintiff contends that the ALJ erroneously assessed her RFC contrary to Social Security Ruling[6] ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).  Pl.'s Mem. Supp. Mot. Summ. J. 4-10, ECF No. 14-1 (citing, *inter alia*, *Fleming v. Barnhart*, 284 F. Supp. 2d 256, 271-72 (D. Md. 2003)).   Plaintiff maintains that the ALJ failed to perform properly a function-by-function assessment of her ability to perform the physical and mental demands of work.  *Id.* at 7.   In particular, she contends that, although the ALJ found that she had moderate difficulties with regard to concentration, persistence, or pace, the ALJ failed to include any limitation on concentration, persistence, or pace in the RFC assessment, instead limiting Plaintiff to "less stressful work of an unskilled nature."  *Id.*  Plaintiff further asserts that the ALJ failed to evaluate the opinions of Drs. Kerasidis and Yousaf regarding her daytime somnolence and fatigue.  *Id.* at 8.  Plaintiff also contends that the ALJ failed to evaluate Dr. Lee's opinion about her ability to reach with her left upper extremity and failed to include a corresponding reaching limitation in the RFC assessment.  *Id.* at 9.  Plaintiff finally argues that the ALJ failed to evaluate properly Dr. Kaiser's finding that she had difficulty following two- and three-step instructions.  *Id.* at 9-10. For the reasons discussed below, Plaintiff's assertions are unavailing.

---

[6] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted.  20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration.  *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1).  "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law."  *Pass*, 65 F.3d at 1204 n.3.

**A.      Plaintiff's Moderate Limitations in Maintaining Concentration, Persistence, or Pace**

SSR 96-8p explains how adjudicators should assess RFC and instructs that the RFC

> "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations.  "Only after that may [residual functional capacity] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy."  The Ruling further explains that the residual functional capacity "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."

*Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (alteration in original) (footnote omitted) (citations omitted).  The Fourth Circuit has held, however, that a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'"  *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)).  Rather, remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review."  *Id.* (quoting *Cichocki*, 729 F.3d at 177).  The court in *Mascio* concluded that remand was appropriate because it was "left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform relevant functions" because the ALJ had "said nothing about [the claimant's] ability to perform them for a full workday," despite conflicting evidence as to the claimant's RFC that the ALJ did not address.  *Id.* at 637; *see Monroe v. Colvin*, 826 F.3d 176, 187-88 (4th Cir. 2016) (remanding because ALJ erred in not determining claimant's RFC using function-by-function analysis; ALJ erroneously expressed claimant's RFC first and then concluded that limitations caused by claimant's impairments were consistent with that RFC).

Plaintiff contends that, in assessing her RFC, the ALJ failed to consider adequately her moderate difficulties in maintaining concentration, persistence, or pace, contrary to *Mascio*. Pl.'s Mem. Supp. Mot. Summ. J. 7-8, ECF No. 14-1.  In *Mascio*, the Fourth Circuit held that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'"  *Mascio*, 780 F.3d at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)).  "[T]he ability to perform simple tasks differs from the ability to stay on task.  Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace."  *Id.* The court in *Mascio* remanded the case for the ALJ to explain why the claimant's moderate limitation in concentration, persistence, or pace at step three did not translate into a limitation in the claimant's RFC.  *Id.*  In other words, "[p]ursuant to *Mascio*, once an ALJ has made a step three finding that a claimant suffers from moderate difficulties in concentration, persistence, or pace, the ALJ must either include a corresponding limitation in her RFC assessment, or explain why no such limitation is necessary."  *Talmo v. Comm'r, Soc. Sec.*, Civil Case No. ELH-14-2214, 2015 WL 2395108, at *3 (D. Md. May 19, 2015), *report and recommendation adopted* (D. Md. June 5, 2015).

"The Social Security Administration has promulgated regulations containing 'listings of physical and mental impairments which, if met, are conclusive on the issue of disability.'  A claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition 'meets or equals the listed impairments.'"  *Radford*, 734 F.3d at 291 (citation omitted); *see* 20 C.F.R. pt. 404, subpt. P, app. 1.  In addition to the five-step analysis discussed above in Part IV and outlined in 20 C.F.R. §§ 404.1520 and 416.920, the Commissioner has promulgated additional regulations governing evaluations of the severity of mental impairments.  20 C.F.R.

§§ 404.1520a, 416.920a.  These regulations require application of a psychiatric review technique at the second and third steps of the five-step framework, *Schmidt v. Astrue*, 496 F.3d 833, 844 n.4 (7th Cir. 2007), and at each level of administrative review.  20 C.F.R. §§ 404.1520a(a), 416.920a(a).  This technique requires the reviewing authority to determine first whether the claimant has a "medically determinable mental impairment."  *Id.* §§ 404.1520a(b)(1), 416.920a(b)(1).  If the claimant is found to have such an impairment, then the reviewing authority must "rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c)," *id.* §§ 404.1520a(b)(2), 416.920a(b)(2), which specifies four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation.  *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3).  According to the regulations, if the degree of limitation in each of the first three areas is rated "mild" or better, and no episodes of decompensation are identified, then the reviewing authority generally will conclude that the claimant's mental impairment is not "severe" and will deny benefits.  *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1).  If the claimant's mental impairment is severe, then the reviewing authority will first compare the relevant medical findings and the functional limitation ratings to the criteria of listed mental disorders in order to determine whether the impairment meets or is equivalent in severity to any listed mental disorder.  *Id.* §§ 404.1520a(d)(2), 416.920a(d)(2).  If so, then the claimant will be found to be disabled.  If not, the reviewing authority will then assess the claimant's RFC.  *Id.* §§ 404.1520a(d)(3), 416.920a(d)(3).

"The ALJ's decision must show the significant history and medical findings considered and must include a specific finding as to the degree of limitation in each of the four functional areas."  *Felton-Miller v. Astrue*, 459 F. App'x 226, 231 (4th Cir. 2011) (per curiam) (citing 20

C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4)).  With regard to the four functional areas, which correspond to the paragraph B criteria of the listings for mental disorders, "[*a*]*ctivities of daily living* include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for [the claimant's] grooming and hygiene, using telephones and directories, and using a post office."  20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)(1).  "In the context of [the claimant's] overall situation, [the Commissioner assesses] the quality of these activities by their independence, appropriateness, effectiveness, and sustainability.  [The Commissioner] will determine the extent to which [the claimant is] capable of initiating and participating in activities independent of supervision or direction."  *Id.*  Moreover, "[*s*]*ocial functioning* refers to [the claimant's] capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals.  Social functioning includes the ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers."  *Id.* § 12.00(C)(2).  Further, "[*c*]*oncentration, persistence, or pace* refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings."  *Id.* § 12.00(C)(3).  "On mental status examinations, concentration is assessed by tasks such as having [the claimant] subtract serial sevens or serial threes from 100.  In psychological tests of intelligence or memory, concentration is assessed through tasks requiring short-term memory or through tasks that must be completed within established time limits."  *Id.*  Finally, "[*e*]*pisodes of decompensation* are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace."  *Id.* § 12.00(C)(4).  "Episodes

of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two)." *Id.* Episodes of decompensation may be inferred from "medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode." *Id.* "The term *repeated episodes of decompensation, each of extended duration* in these listings means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." *Id.*

Here, the ALJ expressly limited Plaintiff to "low-stress work," or work needing no more than moderate attention, concentration, persistence, and pace for prolonged periods. R. at 751-52. The ALJ also found that Plaintiff had moderate limitations in performing activities within a schedule, maintaining regular attendance, being punctual within customary tolerances, and in completing a normal workday or workweek without an unreasonable number and length of rest periods. R. at 752. Because all these limitations relate to Plaintiff's ability to stay on task, Plaintiff's contention that the Court should remand this case under *Mascio* is unavailing.

**B.    ALJ's Consideration of Opinions of Drs. Kerasidis and Yousaf**

Plaintiff next contends that the ALJ failed to evaluate the opinions of Drs. Kerasidis and Yousaf regarding her daytime somnolence and fatigue. Pl.'s Mem. Supp. Mot. Summ. J. 8-9, ECF No. 14-1. "A diagnosis that a person suffers from a condition or disease does not establish disabling functional limitations," however. *Carringer v. Colvin*, No. 2:13-CV-00027-MOC, 2014 WL 1281122, at *5 (W.D.N.C. Mar. 27, 2014); *see Johnson*, 434 F.3d at 658 ("Drowsiness often accompanies the taking of medication, and it should not be viewed as disabling unless the

record references serious functional limitations." (quoting *Burns v. Barnhart*, 312 F.3d 113, 131 (3d Cir. 2002))); *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (per curiam) (indicating that a diagnosis is insufficient to establish disability, as "[t]here must be a showing of related functional loss").

As the Commissioner points out, neither doctor's records indicate the degree or frequency of Plaintiff's somnolence in terms of work-related limitations.  Def.'s Mem. Supp. Mot. Summ. J. 10, ECF No. 17-1.  In any event, "an ALJ's failure to sufficiently weigh a medical source's opinion can amount to harmless error, such as where the plaintiff otherwise fails to show how a proper weighing of the opinion would have altered his or her RFC . . . ." *Williams v. Colvin*, No. 1:14CV423, 2015 WL 4878162, at *6 (M.D.N.C. Aug. 14, 2015) (citing *Tanner v. Comm'r of Soc. Sec.*, 602 F. App'x 95, 100-01 (4th Cir. 2015) (per curiam)).  Here, the ALJ reviewed Dr. Yousaf's October 2004 examination of Plaintiff (R. at 741) and Dr. Kerasidis's June 2003 report (R. at 740), as well as Plaintiff's January and April 2004 sleep studies (R. at 741).  The ALJ further evaluated a treating source's opinion about the side effects of Plaintiff's pain medication causing fatigue, drowsiness, and daytime somnolence.  R. at 742.  Also, Plaintiff does not dispute the ALJ's evaluation of her testimony regarding the effect of her pain and fatigue on her ability to work.  Any error by the ALJ in evaluating the opinions of Drs. Kerasidis and Yousaf regarding her daytime somnolence and fatigue thus was harmless  *See Wait v. Colvin*, Civil Action No. 1:13-1363-TMC, 2014 WL 2979797, at *3 (D.S.C. June 27, 2014). ("[E]ven though the record contains minimal evidence of sleep apnea, and no sleep study or physician opinion regarding resulting functional limitations, the ALJ expressly considered [the claimant's] sleep apnea. . . . [T]he ALJ clearly considered [the claimant's] overall ability to concentrate in assessing her residual functional capacity.  The court cannot see how [the

claimant] suffered any prejudice from the ALJ's analysis, and, thus, agrees with the Report that any error regarding sleep apnea was harmless."). Plaintiff's contention that remand is warranted in this case because the ALJ failed to consider her somnolence and fatigue as found by Drs. Kerasidis and Yousaf thus is unavailing.

**C.      ALJ's Evaluation of Other Pertinent Evidence**

Plaintiff also argues to no avail that the ALJ failed to evaluate properly pertinent evidence of Dr. Lee's opinion that she would have difficulty with reaching overhead with her left arm (R. at 781) and Dr. Kaiser's finding that she had difficulty following two- and three-step instructions (R. at 797). Pl.'s Mem. Supp. Mot. Summ. J. 9-10, ECF No. 14-1. First, in assessing Plaintiff's RFC, the ALJ explicitly considered Dr. Lee's opinion regarding her ability to perform work-related activities, including her difficulty with overhead reaching with her left hand. R. at 752. In any event, even if the ALJ had erred in failing to include a limitation in the RFC assessment to occasional overhead reaching, the error was harmless, as the sedentary job of surveillance-system monitor identified by the VE involves no reaching. *See* DOT 379.367-010, 1991 WL 673244; *see also McClellan v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-12-1767, 2013 WL 1703879, at *4 (D. Md. Apr. 18, 2013).

Second, Plaintiff's contention that the ALJ's failure to discuss Dr. Kaiser's finding that she had difficulty following two- and three-step instructions warrants remand is unavailing as well. The burden is on the party attacking an agency's determination to show that prejudice resulted from the error. *Shinseki v. Sanders*, 556 U.S. 396, 409-10, 129 S. Ct. 1696, 1705-06 (2009). "Where harmfulness of the error is not apparent from the circumstances, the party seeking reversal must explain how the error caused harm." *McLeod v. Astrue*, 640 F.3d 881, 887 (9th Cir. 2011). "[R]eversal is not required when the alleged error 'clearly had no bearing on the

procedure used or the substance of [the] decision reached.'" *Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n.8 (4th Cir. 2004) (quoting *Mass. Trs. of E. Gas & Fuel Assocs. v. United States*, 377 U.S. 235, 248, 84 S. Ct. 1236, 1245 (1964)).   Because Dr. Kaiser found that Plaintiff had difficulty with following two- and three-step instructions, the doctor opined, among other things, that she was moderately limited in understanding, remembering, and carrying out complex instructions. R. at 797.   The ALJ's RFC assessment, in turn, limited Plaintiff to unskilled work that is not complex "involving using common sense while following instructions."   R. at 751 n.5; *see* R. at 882.   Plaintiff has not demonstrated that the ALJ's failure to address Plaintiff's difficulty with following two- and three-step instructions in the RFC assessment would have altered the administrative result.   *See Jones v. Astrue*, 691 F.3d 730, 735 n.8 (5th Cir. 2012).   The ALJ's error, if any, in this regard thus was harmless.

In sum, substantial evidence supports the decision of the ALJ, who applied the correct legal standards here.   Thus, Defendant's Motion for Summary Judgment is **GRANTED**, Plaintiff's Motion for Summary Judgment is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.

## VII

## Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 17) is **GRANTED**.   Plaintiff's Motion for Summary Judgment (ECF No. 14) is **DENIED**.   The Commissioner's final decision is **AFFIRMED**.   A separate order shall issue.

Date: September 20, 2016                                                    /s/
                                                              Thomas M. DiGirolamo
                                                              United States Magistrate Judge